**AMERICAN BOARD OF TRADE, INC.,**
**Plaintiff,**

v.

**William T. BAGLEY, Chairman, Commodity Futures Trading Commission, et al., Defendants.**

**No. 75 Civ. 4223 (HFW).**

United States District Court,
S. D. New York.

Oct. 17, 1975.

---

Richard Nathan, Deputy Gen. Counsel, Washington, D.C., for defendants except United States and Dept. of Agriculture.

Paul J. Curan, U. S. Atty., New York City, for United States by Patrick H. Barth, New York City, of counsel.

David C. Buxbaum, New York City, for plaintiff.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiff American Board of Trade, Inc. (ABT), has brought an action against the Chairman of the Commodity Futures Trading Commission (CFTC), several of its employees and the United States Department of Agriculture by complaint filed on August 26, 1975. The complaint prays for (1) an order enjoining the defendants from interfering with his (sic) business and dealing with him (sic) in an arbitrary and capricious manner and taking his (sic) property without due process of law, (2) the designation of the plaintiff as a contract market for transactions in commodity futures, and (3) compensatory and punitive damages aggregating $1,000,000.00. (The use of the male gender is presumably a reference to Arthur W. Economou, the president of ABT.)

The preliminary injunction hearing was held on September 16, 1975. The plaintiff called two witnesses, Thomas Anthony Russo, Deputy General Counsel, Trading and Markets, Commodity Futures Trading Commission; and Howard Bodenhamer, Acting Deputy Regional Administrator of the Eastern Regional Office. Arthur N. Economou, the president and chief operating officer, was in court at the time of the hearing but was not called as a witness. An affidavit of Mr. Economou was submitted to the court after the hearing. It is not

considered upon the motion for a preliminary injunction for the reason that plaintiff had an opportunity to call Mr. Economou as a witness at the time of the hearing and failed to do so. It is basic to our notions of justice that the defendants should have the right to subject him to cross examination. The fact that they could have called Mr. Economou as a witness is not controlling here. ABT has the burden upon a motion for a preliminary injunction.

The statute creating the CFTC was signed into law on October 23, 1974 (Commodity Futures Trading Commission Act (CFTC Act) Pub.L. No. 93–463) and became effective April 21, 1975. It amended the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, created the Commission as an independent regulatory agency and assigned broad responsibility to the Commission for the regulation of transactions involving the sale of commodities for future delivery (commodity futures).

Section 4 of the Act, 7 U.S.C. § 6 makes it unlawful for any person to engage in transactions in any futures contract except through members of a "board of trade" that has been designated by the Commission as a "contract market." A "board of trade" is defined by Section 2(a)(1), 7 U.S.C. § 2 "to include and mean any exchange or association . . . of persons who shall be engaged in the business of buying or selling [any] commodity."

The Commission was authorized and directed under Section 5 of the Act, 7 U.S.C. § 7, to grant designation "when, and only when," a board of trade has met the conditions and requirements specified in the Act. The application for contract market designation must be accompanied by a showing that the board of trade complies with the requirements set forth in Sections 5 and 5a and "with a sufficient assurance that it will continue to comply." Section 6, 7 U.S.C. § 8. The CFTC Act broadened the definition of commodity to include not only those previously enumerated

but also "all other goods and articles, except onions . . . and all services, rights, and interests in which contracts for future delivery are presently or in the future dealt in." Section 2, 7 U.S.C. § 2.

Although the Act became effective April 21, 1975 a majority of the Commission was not appointed and confirmed until April 10, 1975. Consequently Congress determined that there would not be sufficient time for the Commission to review applications for designation before April 21, 1975 and permitted the Commission to provisionally designate boards of trade for a period not to exceed 90 days after April 21, 1975. Pub.L. No. 94–16.

At the first official meeting of the Commission held on April 15, 1975 the Commission considered a regulation for provisional designation of boards of trade as contract markets.

Mr. Economou, president of ABT, along with other applicants, was notified by letter dated April 16, 1975 that the Commission was adopting a provisional designation rule which required that the applicant demonstrate to the Commission's satisfaction that it was a board of trade within the meaning of the Act and that it actually was operating as a contract market on April 15, 1975. The object of the provisional designation rule was to prevent a disruption of the business of exchanges that were already in operation.

Applicants were instructed to file their applications by April 18, 1975, and also to file a list of their memberships, boards of directors and officers and copies of their bylaws, rules, regulations and resolutions under which they operated. April 18 was the last business day before April 21, the effective date of the CFTC Act.

ABT submitted its application on April 18. The Commission considered the application on April 18 and 19 and denied provisional designation to ABT on April 19 because of the Commission's

inability to determine from the information supplied whether ABT was a board of trade under the Act and the regulations.

The denial was made without prejudice to filing additional information and the decision was conveyed by telephone and telegram to Mr. Economou. ABT did not seek judicial review of that decision.

The Commission's concern was based in part on the fact that ABT did not have an exchange floor, on the uniqueness of some of the practices described in ABT's application and the uncertain impact of those practices and on the fact that the board of trade appeared to be nothing more than Mr. Economou, his wife and companies controlled by him. Seven members were listed in the application, all but one being residents of states or countries outside New York where the exchange is located.

On May 7, 1975 ABT by its attorney furnished additional information which it was informed on May 19, 1975 was inadequate. A further showing by on site inspection was requested and offered on May 20. This was resisted by Mr. Economou and his attorney. On May 22, 1975 the application of ABT again was considered by the Commission and denied. On that day Mr. Economou was again informed of the decision by letter which among other things informed ABT that it had concluded "that to be a board of trade transaction prices must be competitively determined."

The Chairman also wrote "only through a physical inspection of the trading facilities, a review of the transaction records and interviews can the Commission determine whether The American Board of Trade was a 'board of trade'" and as such entitled to be considered for designation as a contract market. Further submission of written material, Mr. Economou was advised, would not significantly advance the application.

On May 28, 1975 ABT's counsel wrote to complain about the pace at which the application was being processed and confusion about the requirements. On June 9, 1975 Chairman Bagley wrote reiterating what had been written to Mr. Economou on May 22. Mr. Economou and his attorney continued to resist efforts to get an on site inspection during business hours. On July 18, 1975 the Commission's power to grant provisional designation expired (Pub.L. No. 94–16 and Section 1.52 of the regulations).

The Commission continued to process ABT's application as one for permanent designation after July 18, 1975. During the period April 21, 1975 through July 18, 1975 and thereafter the Commission processed in addition to ABT's application nine board of trade applications with respect to 55 different futures contracts. All but two had been granted as of the time of the hearing. The last was granted on September 11, 1975. In addition to these applications the Commission received and processed 18,000 applications for registration by various classes of persons including futures commission merchants, persons associated with futures commission merchants, floor brokers, commodity pool operators and commodity trading advisors.

Due to the number of applications, the Commission's limited manpower and the shortness of time, the Commission had to establish priorities. The application of ABT fell in a second level of priority due to the poorly organized and less complete application and the resistance of the ABT. On May 15, 1975 guidelines were transmitted to all of the applicants. The first dealt with the Economic and Public Interest Requirements for Contract Market Designation, the second with Rule Enforcement Requirements for Contract Market designation. No further submission from ABT has been received with respect to these guidelines. The original submission did not purport to meet their requirements. The Commission had previously registered Mr. Economou and his wife as floor brokers and provisionally registered American Board of Trade

Clearing Corp., an ABT affiliate as a futures commission merchant.

On August 21, 1975 two Commission staff members made an unannounced visit to ABT's office to determine whether unlawful trading in futures contracts had taken place after April 21, 1975. Mr. Economou agreed under protest to permit inspection. Three days later the complaint herein was filed. On September 4 this motion was brought on by order to show cause.

The defendants in response have moved to dismiss the complaint in this action because plaintiff has not exhausted its administrative remedies, the court lacks jurisdiction of the subject matter and the complaint fails to state a claim upon which relief can be granted.

Considering the facts as recited above the court has reached the conclusion that plaintiff has failed to show any possibility of success on the merits or irreparable injury and its motion for a preliminary injunction is therefore denied.

With respect to defendants' motions they are granted. It appears from the factual situation here that the delays in processing plaintiff's application for permanent designation as a board of trade and as as such a contract market have been due in large part to ABT's failure to comply with the requirements of the Commission and the guidelines and regulations issued under the Act. These guidelines and regulations are demonstrably reasonable considering the economic and public interest to be protected. The charge of bias made by plaintiff is frivolous in the face of the designation of affiliates as commission merchants and its officers as floor brokers by the same Commission.

Aside from these considerations which must be examined by the court to determine whether there has been a discrimination courts should be reluctant to meddle in the day by day operations of an independent agency which has been designated by Congress as the exclusive agency to implement its statutory mandates.

Moreover, the plaintiff has failed to exhaust administrative remedies available to it. It failed to appeal the decision of the Commission denying it provisional designation as a board of trade. The Commission continues to review the application of the American Board of Trade. This determination is subject to review by the court of appeals under 7 U.S.C. § 8. This court may not usurp the function of an independent agency designed by Congress to consider the issue in question by directing designation of the ABT as a board of trade at this time. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

For the above reasons, I am dismissing the complaint herein. These are the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure.

So ordered.